UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,
                                               No. 13-cr-165 (SRN/LIB)

v.                                         **REPORT AND RECOMMENDATION**

Elfred William Petruk,

                   Defendant.

---

       This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 26] (hereinafter, "Motion to Suppress Evidence"); his Motion to Suppress Eyewitness Identifications, [Docket No. 27] (hereinafter "Motion to Suppress ID"); his Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28] (hereinafter "Motion to Suppress Statements") (collectively, "suppression motions"); and his Motion to Dismiss Count One Based on an Unsupportable Carjacking Theory, [Docket No. 41] (hereinafter "Motion to Dismiss"). The case has been referred to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on August 16, 2013, regarding the parties' motions for discovery,[1] and Defendant's motions for severance,[2] suppression and dismissal. For the reasons outlined below, the Court recommends that Defendant's motions for suppression and dismissal, [Docket Nos. 26-28, 41], be **DENIED**.

I.     **Background**

       Elfred William Petruk ("Defendant") is charged with one count of carjacking, alleging

---

[1] The parties' discovery motions were the subject of a separate Order. [Docket No. 45].
[2] Defendant's Motion for Severance of Counts, [Docket No. 25], was the subject of a separate Report and Recommendation. [Docket No. 46].

that on June 18, 2012, he took a 1989 GMC Sierra pickup truck (the "vehicle") from the person

or presence of a person identified as "TRB" by "force and violence and intimidation," in

violation of 18 U.S.C. § 2119(1); and one count of being a felon in possession of a firearm, in

violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  (See Indictment [Docket No. 1], at 1-3).[3]

Defendant was indicted on June 18, 2013, and subsequently, he made his suppression motions,

[Docket Nos. 26-28], on July 12, 2013, and his Motion to Dismiss, [Docket No. 41], on August

14, 2013.

## II.    Defendant's Motion to Dismiss Count One Based on an Unsupportable Carjacking Theory [Docket No. 41]

Defendant argues that the carjacking charge must be dismissed because the "taking" of

the vehicle occurred before Defendant's encounter with TRB and was achieved without the use

of force or intimidation.  (See Docket No. 41).

### A.  Facts

For purposes of the present motion, the Government and Defendant have stipulated to the

following facts:

> Around 2:00 a.m. on [June 18],[4] 2012, [TRB] received a call from his mother
> that his truck had been stolen from their garage.  [TRB] was out driving in another
> truck at the time he received the phone call, and started heading home. As [TRB]
> drove home, he noticed his truck drive past him on the road.  [TRB] did a u-turn
> and followed the truck, eventually flashing the truck over to the side of the road.
> The driver of his stolen truck got out, and when [TRB] started to get out of his
> car, the driver got back into the truck and took off.  [TRB] followed his stolen
> truck onto some rural roads, where it pulled over.  [TRB] pulled over behind his
> stolen truck.   The driver of the truck got out and approached [TRB] with
> something behind his back. As the driver approached [TRB]'s window, he swung
> a hammer at [TRB], who grabbed it with his hands.   The driver pulled the
> hammer out of [TRB]'s hands.  [TRB] engaged his vehicle and starting driving
> away, and the driver swung the hammer and struck the driver's rear window,

---

[3] On August 15, 2013, the District Court dismissed two additional counts that were contained in the Indictment. (See Order [Docket No. 42]).

[4] In his Motion to Dismiss, [Docket No. 41], Defendant describes these events as taking place in the early morning hours of June 23, 2012.  (Mot. Dismiss [Docket No. 41], at 1).  This appears to be a typographical error.

> breaking it as [TRB] drove away. The driver got back in the stolen truck and drove away. The truck was later discovered abandoned in a rural ditch. The government alleges that Mr. Petruk is the driver/car thief.

(Mot. Dismiss [Docket No. 41], at 1-2); <u>see also</u> Gov't's Mem. Opp. Mot. Dismiss [Docket No. 52] (hereinafter, "Gov't's Mem."), at 1 ("For purposes of deciding the defendant's motion, the government has no objection to the Court considering the facts proferred in the Defendant's motion to dismiss, but reserves the right to contest these facts at trial.").

## B. Standard of Review

Defendant's motion to dismiss is made pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, which governs motions alleging sufficiency defects in the indictment.[5] The Eighth Circuit has repeatedly held that:

> An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

<u>United States v. Hayes</u>, 574 F.3d 460, 472 (8th Cir. 2009) (quoting <u>United States v. Sewell</u>, 513 F.3d 820, 821 (8th Cir. 2008) (quotation omitted)). "An indictment is normally sufficient if its language tracks the statutory language." Sewell, 513 F.3d at 821 (citing <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974)).

Similarly, the District of Minnesota has held that, in order to survive a criminal defendant's Rule 12 motion to dismiss:

> an Indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged. <u>See</u>

---

[5] Although Defendant does not expressly state the basis of his motion, Defendant generally argues that the facts set forth in Part II.A, <u>supra</u>, fail to allege a violation of 18 U.S.C. § 2119(1). Thus, the Court construes Defendant's Motion to Dismiss, [Docket No. 41], as "a motion alleging a defect in the indictment," made pursuant to Fed. R. Crim. P. 12(b)(3)(B).

> United States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988). As a result, if the acts, that are alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed. See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973, 104 S. Ct. 2349, 80 L. Ed. 2d 822 (1984). In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, as to the offenses that are said to have occurred, in order to place the defendant on fair notice of the charges against him, and to enable him to raise an acquittal, or conviction, so as to prevent his double jeopardy for a single offense. See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994).

United States v. Hughson, 488 F. Supp. 2d 835, 840 (D. Minn. 2007) (Erickson, C.M.J.), adopted by 488 F. Supp. 2d 835 (D. Minn. 2007) (Doty, J.).

## C. Discussion

In the present case, the facts to which the Government and Defendant have stipulated for purposes of the present motion are sufficient to allege that Defendant committed a carjacking in violation of 18 U.S.C. § 2119(1). The carjacking statute at issue provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both.

18 U.S.C. § 2119(1). Thus, the Eighth Circuit has identified the elements of the offense as "(1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." United States v. Wright, 246 F.3d 1123, 1126 (8th Cir. 2001) (citing United States v. Williams, 136 F.3d 547, 550 (8th Cir. 1998)).

Defendant challenges the indictment with regard to the first element—in particular, the use of "force and violation or . . . intimidation"—arguing that:

the initial taking of the car was not accompanied by the use of force. The car was stolen and [TRB] had lost control and possession of it well before the subsequent roadside incident. [TRB] never regained control or possession of his truck such that there was a subsequent "taking." Since the initial taking of the car did not involve force, violence or intimidation, this case does not involve a "carjacking" but a car theft followed by a roadside assault/damage to property claim.

(Mot. Dismiss [Docket No. 41], at 4).[6] The Court is not persuaded by Defendant's argument.

The facts to which the parties have stipulated for purposes of the present motion, and which the Court accepts as true for purposes of the present motion, demonstrate that: (1) Defendant did initially "take" the vehicle at issue without the use of force, violence or intimidation in the initial taking;[7] but that (2) the owner of the vehicle pursued the defendant; and that (3) upon realizing that he was being pursued, Defendant stopped and exited the vehicle and, wielding a hammer as a weapon, did with force physically confront his pursuer, cause or attempt to cause injury to the pursuer, and did damage the pursuer's vehicle in order to terminate the pursuit at the scene of the confrontation so as to finally effectuate the theft of the vehicle without further pursuit. See Part II.A, supra.

Defendant's argument appears to flow from the premise that a vehicle, once taken without force, cannot subsequently be re-taken by the same perpetrator such that the second taking would fall within the bounds of the carjacking statute. The Court has been unable to locate any legal authority in support of this interpretation of the carjacking statute. In fact, the Eighth Circuit rejected a similar argument in United States v. Wright. 246 F.3d 1123 (8th Cir. 2001).

In Wright, the defendant was convicted of carjacking for his theft of a vehicle from an enclosed valet parking lot. Id. at 1125. The defendant found the vehicle unattended with its

---

[6] Defendant uses the same language in his Response to Government's Memorandum in Opposition to Motion to Dismiss. (See Docket No. 53, at 3-4).
[7] The Government concedes that the carjacking statute would not apply to Defendant's initial taking of the vehicle. (Gov't's Mem. at 5 ("Here, admittedly, the initial taking was not in the presence of another.")).

engine running and sat himself in the driver's seat before being confronted by one of the two valets working at the time.  Id.  The defendant then accelerated, running into the valet, and drove about twenty yards with the valet on the hood.  Id.  The defendant hit the brakes, causing the valet to slide off the hood.  Id.  The defendant then began to reverse, but the valet was able to open the driver's side door.  Id.  A struggle ensued, ending when the defendant succeeded in shoving the valet from the vehicle.  Id.  The defendant then fled the parking lot.  Id.  At trial, the defendant stipulated that he was the person in the vehicle when it was stolen.  Id.  On appeal, he argued that there was insufficient evidence to convict him of carjacking because the taking of the vehicle occurred when he entered the vehicle, and that "any force [the defendant] used was after the taking and meant only to deter [the valet]'s attempts to recover the car."  Id. at 1126.  The Eighth Circuit rejected this argument, finding in part that, even after the defendant entered the vehicle, the valet by his actions "was claiming control of the car," and that the defendant's actions resulted in his taking the vehicle from the valet's presence.  Id. at 1126-27.

The Government urges the Court to follow Wright, and the Court is persuaded that the two cases present similar circumstances.  In the present case, as in Wright, the Defendant succeeded in initially "taking" the vehicle without resort to force, violence or intimidation.  Additionally, in the present case, as in Wright, the Defendant was subsequently confronted by a person (TRB in the present case, and the valet in Wright) claiming control of the vehicle.  Finally, in the present case, as in Wright, the Defendant used force, violence and/or intimidation to remove the vehicle from the presence of the person claiming control of the vehicle.  Defendant argues that Wright is not controlling because the defendant in that case urged "an extremely narrow view of the scope of the taking," and that the Eighth Circuit in Wright merely held that the defendant had not effected a taking merely by entering the vehicle.  (See Def.'s Response to

Gov't's Mem. Opp. Mot. Dismiss [Docket No. 53] (hereinafter, "Def.'s Resp."), at 2 (citing

Wright, 246 F.3d at 1126-27)).  However, in the instant case, the Court finds that the "view of

the scope of the taking" is only slightly broader than that advanced in Wright.  In both cases, the

defendants appear to acknowledge (at least, for the purposes of the present motion and the appeal

in Wright) that they effected a taking of a vehicle, *and* that when subsequently confronted they

used force, violence or intimidation to retain control of the vehicle.

Defendant argues that the only "taking" that matters is the initial taking, which was

achieved without resort to force, violence or intimidation.  (See Def.'s Resp. at 3).  In support of

this argument, Defendant cites Holloway v. United States, 526 U.S. 1 (1999), and in particular

the following passage:

> The carjacking statute essentially is aimed at providing a federal penalty for a
> particular type of robbery.  The statute's *mens rea* component thus modifies the
> act of "taking" the motor vehicle.  It directs the factfinder's attention to the
> defendant's state of mind at the precise moment he demanded or took control over
> the car "by force and violence or by intimidation."  If the defendant has the
> proscribed state of mind at that moment, the statute's scienter element is satisfied.

Id. at 8.  According to Defendant's reading of Holloway, "[t]he focus of the statute is on the

intent to use force at the moment of the initial taking such that 'taking' and 'use of force' cannot

be separated into discrete temporal events."  (Def.'s Resp. at 3).

Defendant's reliance on Holloway does not persuade the Court.  First, the issue in

Holloway was not whether the defendant used force, violence or intimidation to effect his taking,

but rather, whether the defendant had the requisite "intent to cause death or serious bodily harm."

526 U.S. at 6 ("The specific issue in this case is what sort of evil motive Congress intended to

describe when it used the words 'with the intent to cause death or serious bodily harm' in the

1994 amendment to the carjacking statute.").  Additionally, there is nothing in the cited passage

of Holloway that suggests that a perpetrator could not initially take a vehicle without using force,

and then subsequently, upon being confronted by the vehicle's owner, commit a carjacking by retaining control of the vehicle by means of force or intimidation. Therefore, the instruction from Holloway is not, as Defendant argues, that once a defendant initially takes a vehicle without violence or intimidation in the presence of another that defendant cannot subsequently carjack the same vehicle. Rather, the instruction in Holloway is simply that *when a defendant uses violence or intimidation to take a vehicle*, the issue becomes the defendant's state of mind—whether he intends "to cause death or serious bodily harm"—at the time that he uses violence or intimidation to take the vehicle.

Finally, the Court notes that for Defendant's argument to succeed, he must demonstrate that, even accepting the facts as stipulated, the Court could not find that he had taken the vehicle from "the presence" of TRB. "Property is in the presence of a person if it is so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it." United States v. W.T.T., 800 F.2d 780, 782 (1986) (quoting United States v. Burns, 701 F.2d 840, 843 (9th Cir.)).[8] Had Defendant simply evaded TRB by means of evasive driving, the carjacking statute might well not apply here. However, when Defendant stopped the vehicle, exited the vehicle and approached TRB on foot, the vehicle was at that time in the presence of a person claiming rightful control of it. Only Defendant's use of force, violence and intimidation prevented TRB from exercising that control. Thus, Defendant's actions, for purposes of the motion to dismiss based on the stipulated facts, fall within the language of the carjacking statute.

---

[8] The statute at issue in W.T.T. was not the carjacking statute, but instead was the federal robbery statute, 18 U.S.C. § 2111. W.T.T., 800 F.2d at 782. Although the Eighth Circuit has not expressly applied the same language to the "presence" element in the carjacking statute, several other circuit courts and at least one district court within the Eighth Circuit have done so. See, e.g., United States v. Casteel, 721 F. Supp. 2d 842, 848 (S.D. Iowa 2010); see also United States v. Savarese, 385 F.3d 15, 19 (1st Cir. 2004); United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998); United States v. Edwards, 231 F.3d 933, 937 (5th Cir. 2000); United States v. Holman, 446 Fed. Appx. 757, 762-63 (6th Cir. unpub. 2011); United States v. Moore, 193 F.3d 793, 797 (10th Cir. 1999); United States v. Kimble, 178 F.3d 1163, 1168 (11th Cir. 1999).

For the reasons articulated above, the Court recommends that Defendant's Motion to Dismiss Count One Based on an Unsupportable Carjacking Theory, [Docket No. 41], be **DENIED**.

## III. Defendant's Motion to Suppress Eyewitness Identifications [Docket No. 27]

Defendant next argues[9] that the eyewitness identification of him on June 19, 2012, should be suppressed because it was the product of an unnecessarily suggestive photo array and, as such, violated his right to due process. (<u>See</u> Docket No. 27).

### A. Facts[10]

On June 19, 2012, Officer Jeffrey A. Karkkainen ("Officer Karkkainen") of the St. Louis County, Minnesota, Sheriff's Department prepared a photo lineup to show to TRB. Using the Minnesota Reciprocity of Arrest Photographs (MRAP) system, Officer Karkkainen entered Defendant's name as the baseline subject, and the MRAP—using the physical characteristics included in Defendant's profile—provided arrest photographs of Defendant and five other men with similar physical characteristics. (Gov't's Ex. 2). The photo array produced by the MRAP software randomly placed Defendant in the No. 1 spot in the photo lineup.

Officer Karkkainen testified that he explained to TRB that the photo lineup might or might not include the suspect in the case. Officer Karkkinen then showed TRB each of the six individual photographs in the order generated by the MRAP.[11] TRB looked at each of the photographs, first setting aside photographs No. 1 and No. 3, then he looked at those two again

---

[9] Although the Court initially afforded Defendant an opportunity to further brief this issue, (<u>See</u> Minute Entry [Docket No. 44]), Defendant ultimately asked the Court to conduct a "four corners review of . . . the constitutionality of the photo-line up display on the record before the Court without further briefing." (Letter to M.J. [Docket No. 54]).

[10] The facts for this Part are derived from the testimony of St. Louis County, Minnesota, Sheriff's Department Officer Jeffrey A. Karkkainen at the August 16, 2013, motions and evidentiary hearing, and from **Government's Exhibit 2**: color photocopies of the photo lineup provided to TRB for eyewitness identification on June 19, 2012, containing TRB's initials acknowledging his identification of Defendant.

[11] Although Government's Exhibit 2 includes a page that contains side-by-side photographs of all six individuals, Officer Karkkainen testified that that page was not shown to TRB.

and identified photograph No. 1 as the person whom he believed had stolen his pickup truck and assaulted him. Officer Karkkainen explained that TRB should indicate his selection only if he was certain of his identification; subsequently, TRB circled the number "1" below the photograph of Defendant and signed with his initials, "T.B."

**B. Standard of Review**

For a defendant to prevail on a motion to suppress eyewitness identification, he must first demonstrate that the identification procedures used by the police were "impermissibly suggestive." United States v. Scott-Kelley, No. 10-cr-190 (JNE/SRN), 2010 U.S. Dist. LEXIS 139343, at *66 (D. Minn. Nov. 9, 2010) (Nelson, M.J.) (citing Manson v. Brathwaite, 432 U.S. 98, 116 (1977)), adopted by 2011 U.S. Dist. LEXIS 2218 (D. Minn. Jan. 10, 2011) (Ericksen, J.); see also United States v. Gipson, 383 F.3d 689, 698 (8th Cir. 2004) (court considers "first, whether the pretrial identification procedures used were impermissibly suggestive"). If the Defendant makes that showing, the Court must determine whether "under the totality of the circumstances of the case, the suggestive confrontation created 'a very substantial likelihood of irreparable misidentification.'" Graham v. Solem, 728 F.2d 1533, 1541 (8th Cir. 1984) (quoting Brathwaite, 432 U.S. at 116); see also Scott-Kelley, 2010 U.S. Dist. LEXIS 139343, at *66. Essentially, the second inquiry is whether considering the "totality of the circumstances," the identification is reliable. Id.; United States v. Hadley, 671 F.2d 1112, 1115 (8th Cir. 1982). The reliability inquiry is the linchpin in determining the admissibility of identification evidence. Hadley, 671 F.2d at 1115. When considering the reliability of an identification, the following factors are to be considered:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

<u>Graham</u>, 728 F.2d at 1541-42 (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972)).[12]

## C. Discussion

Defendant makes no specific argument with regard to his challenge to the photo lineup and eyewitness identification, but he merely asks for a four-corners review and a determination of whether the eyewitness identification was impermissibly suggestive. (<u>See</u> Letter to M.J. [Docket No. 54]).

Considering the totality of the circumstances, the Court finds that the photo lineup shown to TRB was not impermissibly suggestive. Officer Karkkainen did not merely show TRB a single photograph. <u>See</u> <u>United States v. Daily</u>, 488 F.3d 796, 804 n.7 (8th Cir. 2007) (noting prior Eighth Circuit rulings that "showing only a single suspect to the witness is the most suggestive and, therefore, the most objectionable method of pretrial identification"). Rather, the five photographs selected by the MRAP to be shown to TRB along with Defendant's photograph were all of white males, like Defendant, and were of men with similar physical features to those of Defendant. <u>See</u> <u>United States v. Johnson</u>, 56 F.3d 947, 954 (8th Cir. 1995) (affirming constitutionality of photo spread comprised of men of the same race and with similar features). Additionally, there is no evidence that Officer Karkkainen prompted or otherwise suggested to TRB which photograph TRB should identify. <u>Id.</u> ("There was no evidence of any prompting or suggestion from the officer on any occasion . . . ."). In fact, the order that the photographs were shown to Defendant was randomly determined by the MRAP software. Further, Officer Karkkainen told TRB that Defendant's photo may not even be included in the six photographs that TRB was asked to review. Finally, TRB, on his own initially culled out photographs No. 1 and No. 3 for a closer examination before he ultimately correctly identified photograph No. 1 as

---

[12] These five factors are commonly referred to as the "<u>Biggers</u> factors."

Defendant. Officer Karkkainen testified that after TRB had singled out the photograph of Defendant, he told TRB to sign or initial the photograph only if he was certain of his selection, and TRB subsequently initialed the photograph of Defendant.

For the reasons set forth above, the Court recommends that Defendant's Motion to Suppress Eyewitness Identifications, [Docket No. 27], be **DENIED**.

## IV. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 26]

At the August 16, 2013, motions and evidentiary hearing, the Government introduced without objection, and the Court accepted into evidence for purposes of the present motion, two search warrants (one authorizing seizure of Defendant's DNA, and one authorizing a search for a blue Chevrolet pickup truck) and their accompanying affidavits.[13] Defendant argues in this motion[14] that "the search warrants issued in this case were issued without a sufficient showing of probable cause in the supporting affidavit," and, therefore, they violate his Fourth Amendment right against unreasonable search and seizure. (See Docket No. 26).

### A. Facts[15]

#### 1. Warrant for Seizure of DNA

Investigator Voltzke of the St. Louis County, Minnesota, Sheriff's Office made the application for a search warrant and swore out the attached Affidavit, seeking "DNA Buccal

---

[13] **Government's Exhibit 1** is a warrant, issued by the Hon. Sally Tarnowski, Minnesota 6th Judicial District Judge, on December 14, 2012, for search of Defendant's person and seizure of a DNA sample; **Government's Exhibit 3** is a warrant, issued by the Hon. Heather L. Sweetland, Minnesota 6th Judicial District Judge, on June 21, 2012, authorizing the search of a garage located in Duluth, Minnesota, for a blue 1985 Chevrolet K10 pickup truck. The Government represented at the August 16, 2013, motions and evidentiary hearing that the warrant contained in Government's Exhibit 3 is not directly applicable to the charges in the present Indictment, but was provided to the Court because it is referred to in the application for the warrant contained in Government's Exhibit 1.

[14] Although the Court here too afforded Defendant an opportunity to further brief this issue, (See Minute Entry [Docket No. 44]), Defendant instead ultimately asked the Court to conduct a "four corners review of the two search warrants . . . on the record before the Court without further briefing." (Letter to M.J. [Docket No. 54]).

[15] The facts in this Part are derived from Government's Exhibits 1 and 3. See fn.9, supra. Page numbers in citation in this Part refer to the numbers in the top right-hand corner of each page in Government's Exhibits 1 and 3.

samples" from Defendant.  (Gov't's Ex. 1, at Application 1-1).

Investigator Voltzke stated that in the early morning hours of June 18, 2012, St. Louis County Sheriff's Deputies responded to a report of a motor vehicle theft in Saginaw, Minnesota. (Id. at Application 1-2, ¶ 1).  The victim reported that he was driving when he located his stolen vehicle being driven in the City of Hermantown; that he followed the vehicle until it stopped; that the man who was driving his vehicle exited the vehicle carrying a hammer and approached the victim.  (Id.).  The victim reported that he tried to grab the hammer, but was injured when the suspect pulled the hammer away.  (Id.).  The victim stated that, as he began to drive away, the suspect used the hammer to break the rear window of the vehicle that the victim was driving. (Id.)  The victim reported that he lost sight of his stolen vehicle near the intersection of Morris Thomas Road and Ugstad Road in Hermantown.  (Id.).  Investigator Voltzke stated that officers located the stolen vehicle abandoned in a ditch on Ugstad Road in Hermantown.  (Id.).  The officers then had the vehicle towed to the St. Louis County Sheriff's Office to be processed, and a DNA sample was collected.  (Id.).

Subsequently, on June 19, 2012, the victim was presented with a photo lineup, from which he positively identified Defendant as the man who had been driving his stolen pickup truck.  (Id. at ¶ 2).[16]  Defendant was arrested on December 12, 2012, at which time he was in possession of a large hammer that was seized as evidence.  (Id. at ¶ 4).[17]

Investigator Voltzke swore out his affidavit before the Hon. Sally Tarnowski, Minnesota 6th Judicial District Judge ("Judge Tarnowski"), on December 14, 2012, and Judge Tarnowski

---

[16] Defendant's Motion to Suppress ID, [Docket No. 27], was addressed in Part III, supra.

[17] In the application, Investigator Voltzke also stated that, on June 20, 2012, he learned that the Duluth, Minnesota, Police Department intended to seek a search warrant for a search at Defendant's residence.  (Gov't's Ex. 1, at Application 1-2, ¶ 3).  Investigator Voltzke participated in the search of a detached garage at Defendant's residence pursuant to that search warrant, which resulted in the seizure of a different vehicle than the one now at issue in the present case, which the authorities confirmed had also been stolen on June 18, 2012, from the City of Proctor.  (Id.). The facts presented in the application for the June 21, 2012, search warrant are detailed in Part IV.A.2, infra.

issued the search and seizure warrant the same day.  (Id. at Application 1-3; at Warrant 1-1).

Approximately 1 hour, 15 minutes later, pursuant to the warrant, Investigator Voltzke obtained

DNA Buccal samples from Defendant.  (Id. at Receipt, Inventory and Return 3-1).

### 2.  Warrant for Search for Different Pickup Truck[18]

Officer Michael Erickson ("Officer Erickson") of the Duluth Police Department made the

application and swore out the attached Affidavit, seeking a warrant to search for a blue 1985

Chevrolet K10 pickup truck, registered to a resident of Proctor, Minnesota, in the detached

garage directly behind Defendant's residence.  (Gov't's Ex. 3, at Application 1-4 to 2-4).

Officer Erickson stated that he had recently received information from a confidential

reliable informant (the "CRI")[19] that Defendant had stolen a Chevrolet pickup truck[20] from

Proctor, Minnesota, and that the pickup truck was being stored in the garage at Defendant's

residence.  (Id. at Application 3-4, ¶ 4).  Officer Erickson checked police records related to stolen

pickup trucks, and identified a record that contained a description of a pickup truck reported

stolen from Proctor that matched the description provided by the CRI.  (Id. at ¶¶ 4-6).

Additionally, the CRI reported that Defendant had also stolen a pickup truck in rural St. Louis

County and had assaulted a witness with a hammer.  (Id. at ¶ 4).[21]  Officer Erickson's search of

police records identified a call on June 18, 2012, reporting the theft of a 1989 maroon GMC

pickup truck, in which the caller reported that the person who stole the pickup truck had

---

[18] Defendant has not specifically challenged this second warrant, but since it was referenced in the affidavit
supporting the application for the Buccal DNA search warrant which Defendant is challenging, the Court will
review this second warrant for probable cause in the interest of completeness.
[19] Investigator Erickson states that the CRI:
    has provided reliable information that has been corroborated through independent law enforcement
    investigation to include a check of police reports and information from other Law Enforcement Agencies,
    other confidential reliable informants and [Investigator Erickson]'s own personal knowledge.  [The CRI]
    has conducted over 15 controlled purchases of controlled substances and provided information that has led
    to at least 10 arrests and 5 search warrants for the Duluth Police Department, Special Investigations Unit.
(Gov't's Ex. 3, at Application 4-4, ¶ 10).
[20] This pickup truck is different from the one involved in the carjacking count of the Indictment in this case.
[21] This is apparently a reference to the pickup truck at issue in the carjacking count of the Indictment in this case.

assaulted her brother with a hammer.  (Id. at ¶¶ 5, 7).  The June 18, 2012, caller described the person she said she had seen stealing the pickup truck, and the description matched a description of Defendant.  (Id. at ¶ 7).

Officer Erickson swore out his affidavit before the Hon. Heather L. Sweetland, Minnesota 6th Judicial District Judge ("Judge Sweetland") on June 21, 2012, and Judge Sweetland issued the search and seizure warrant the same day.  (Id. at Application 4-4, at Search Warrant 2-2).  Pursuant to the search warrant, executed on June 21, 2012, officers seized a 1985 Chevrolet K10 pickup truck from Defendant's residence.  (Id. at Receipt, Inventory and Return 3-1).

**B. Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV. The Eighth Circuit has explained that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause."  United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987).  Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231).  "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular

place.'" <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005) (quoting <u>United States v.</u> <u>Murphy</u>, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, <u>Gates</u>, 462 U.S. at 238)).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." <u>United States v. Grant</u>, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" <u>United States v. Wiley</u>, No. 09-cr-239 (JRT/FLN), 2009 U.S. Dist. LEXIS 116899, at *6 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting <u>Solomon</u>, 432 F.3d at 827; edits in <u>Wiley</u>). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" <u>United States v. Smith</u>, 581 F.3d 692, 694 (8th Cir. 2009) (quoting <u>United</u> <u>States v. Reivich</u>, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." <u>Gates</u>, 462 U.S. at 238-39 (quoting <u>Jones v. United</u> <u>States</u>, 362 U.S. 257, 271 (1960)).

### C. Discussion

Defendant makes no specific argument with regard to his challenge to the legality of the search warrants, but he merely asks for a four-corners review and a determination of whether the warrants were supported by probable cause. (<u>See</u> Letter to M.J. [Docket No. 54]).

Based on the information provided in the affidavits, there is ample evidence to conclude that probable cause existed for the issuance of the search warrants now at issue. The warrant in

Government's Exhibit 1 sought DNA evidence to match DNA recovered from a GMC pickup truck that had been reported stolen and subsequently recovered abandoned. The person who called to report that stolen vehicle described a suspect who matched the description of Defendant, and a different witness (the victim in the present case—TRB) identified Defendant from a photo lineup. The warrant in Government's Exhibit 2 was issued pursuant to a CRI's description of a stolen Chevrolet pickup truck in a detached garage at Defendant's residence that matched the description of a pickup truck that had been separately stolen in Proctor, Minnesota.

Considering the totality of the circumstances and the deference this Court must afford Judge Tarnowski's and Judge Sweetland's decisions in issuing the search warrants, the Court concludes that there was at least "'a fair probability that contraband or evidence of a crime' [would] be found" as a result of the searches and seizures authorized by those warrants. United States v. Velazquez-Ramos, No. 11-cr-111 (MJD/FLN), 2011 U.S. Dist. LEXIS 67651, at *14 (D. Minn. Apr. 29, 2011) (Noel, M.J.) (quoting Gates, 462 U.S. at 238), adopted by 2011 U.S. Dist. LEXIS 67588 (D. Minn. June 23, 2011) (Davis, C.J.).

Additionally, even if the Court were to conclude that there was not probable cause to support the search warrant, the executing officers' good-faith reliance on that warrant would militate against suppressing evidence obtained in the search. See United States v. Leon, 468 U.S. 897, 919-21 (1984) (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope").[22] While Defendant alleges that the search warrants were "executed in an illegal and

---

[22] See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

unlawful manner, and not in good faith," (Def.'s Mot. Suppress Evid. [Docket No. 26], at 1, ¶ 1), he neither cites any specific facts in the record, nor any legal authority, that would tend to suggest that the present case falls outside of Leon's "good faith" exception.[23] Moreover, the Court finds no support for any of the exceptions to Leon in the present record.

Consequently, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 26], be **DENIED**.

## V.     Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 28]

Defendant argues in his final motion[24] that any statements he made should be suppressed because (1) they were made without the assistance of counsel and without a valid Miranda warning,[25] and (2) they were not made voluntarily. (See Docket No. 28).

### A.  Facts[26]

On June 24, 2013, Officer Erickson and an agent from the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (together, the "officers") met with Defendant at the St. Louis County Jail and notified him that, on the following day, they would be transporting him to the U.S. Courthouse in Minneapolis, Minnesota (the "Federal Courthouse"), for his initial appearance on the charges in the present Indictment.[27] At that time, on June 24th, they read

---

[23] See Leon, 468 U.S. at 923 (exceptions to the good faith rule when issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," "where the issuing magistrate wholly abandoned his judicial role," or when the warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonable presume it to be valid").

[24] Although the Court here too afforded Defendant an opportunity to further brief this issue, (See Minute Entry [Docket No. 44]), Defendant ultimately asked the Court to conduct a "four corners review of . . . the statement of Mr. Petruk (Officer Ericksen's testimony) . . . on the record before the Court without further briefing." (Letter to M.J. [Docket No. 54]).

[25] See Miranda v. Arizona, 384 U.S. 436 (1966).

[26] The facts for this Part are derived from the testimony of Officer Erickson at the August 16, 2013, motions and evidentiary hearing.

[27] Officer Erickson testified that for other reasons he had previously spoken on the phone with Defendant, but that June 24, 2013, was the first time that they had met face to face.

Defendant a <u>Miranda</u> warning and told him what he was being charged with; Defendant declined to speak with the officers at that time.

On June 25, 2013, the officers transported Defendant from the St. Louis County Jail to the Federal Courthouse in Minneapolis. During the drive, neither of the officers had any communication with Defendant; rather, Officer Erickson testified that he turned up the music in the back of the vehicle, where Defendant was seated, so that he could hear the music and so that the officers could speak in private. As they neared the Federal Courthouse in Minneapolis, Defendant asked about the firearm charge that he was facing, and Officer Erickson responded that, because Defendant had the night before invoked his <u>Miranda</u> rights, the officers could not talk with him about any of the charges in the Indictment. The officers continued to the Federal Courthouse, parked their vehicle, and escorted Defendant to the building's elevator. While they were all three in the elevator,[28] Defendant stated that if the firearm at issue in the firearm charge in the Indictment was "the gun from Laura Zebull, that will be trouble."[29] Officer Erickson testified that the officers did not in any way prompt Defendant to make this statement.

## B. Standard of Review

"[<u>Miranda</u>] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." <u>United States v. Chipps</u>, 410 F.3d 438, 445 (8th Cir. 2005) (<u>citing Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)). <u>Miranda</u> warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994) (<u>quoting Miranda</u>, 384 U.S. at 444).

---

[28] Officer Erickson testified that he could not recall whether a U.S. Marshal was also in the elevator with them.
[29] The name "Laura Zebull" does not appear in any of the documents provided to the Court, and is spelled phonetically based on the testimony of Officer Erickson at the August 16, 2013, motions and evidentiary hearing.

However, "[v]oluntary statements that are not in response to interrogation are admissible with or without the giving of Miranda warnings." United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005).

"[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). "When a suspect in custody makes spontaneous statements to an officer, no interrogation can be imputed to the officer." United States v. Martinez, No. 12-cr-26(2) (JRT/JSM), 2012 U.S. Dist. LEXIS 175978, at *9 (D. Minn. Dec. 12, 2012) (citing United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997).

## C. Discussion

Defendant makes no specific argument with regard to why his statements should be suppressed, but he merely asks for a four-corners review and a determination of whether U.S. Constitution requires that his statements be suppressed. (See Letter to M.J. [Docket No. 54]).

There is no dispute that Defendant was in custody on June 25, 2013, at the time that he made the statement at issue here. There also is no question that the officers did not engage in any "express questioning," as there is no evidence in the present record to show that they asked Defendant any specific questions about the charges contained in the Indictment—in fact, the evidence present in the record indicates that the officers did not speak to Defendant at all, except to respond to a question from Defendant by telling him that they could not speak to him because he had previously invoked his Miranda rights.

The circumstances in the present case are similar to those in United States v. Fleck, 413 F.3d 883 (8th Cir. 2005), in which the Eighth Circuit held that even where a transporting officer

engages in some discussion of the pending charges, that discussion might not rise to the level of "the functional equivalent of interrogation." In Fleck, the defendants sought to suppress statements made in the presence of a Bureau of Alcohol, Tobacco, Firearms and Explosives agent who was transporting the defendants from the jail in Douglas County, Nebraska, into Federal custody. 413 F.3d at 889. During transport, the defendants asked the agent what crime they were charged with, and he answered that they were charged with being felons in possession of a firearm. Id. The defendants responded by making incriminating statements about the firearms in question. Id. The Eighth Circuit held that the defendants' statements:

> were not the product of interrogation, but were volunteered. [Special Agent] Rush testified that the only thing he remembered asking the two was how they liked the food at the Douglas County Jail. It can hardly be said that this was in some way calculated to elicit an incriminating response from either brother.

Id. at 893.

The officers' behavior in the present case was even more innocuous than that at issue in Fleck. Officer Erickson testified that that they did not even so much as engage in casual conversation with Defendant during the drive to Minneapolis, but that instead, they turned up the music in the back of the vehicle where Defendant was riding so that the officers could converse privately among themselves. On this record, it cannot be said that the officers engaged in behavior that would have been reasonably likely to elicit an incriminating response from Defendant. Additionally, the fact that Officer Erickson had previously spoken on the phone with Defendant about unrelated matters, by itself, is not sufficient to support the conclusion that Officer Erickson's participation in the transport of Defendant was reasonably likely to elicit incriminating statements from Defendant. Cf. United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984) (officer's statement to defendant about a prior meeting between them did not

constitute interrogation because the officer did not know that his remarks would likely elicit an incriminating response).

Where courts have found an officer's words or actions to be the "functional equivalent of interrogation," those words or actions have been much more problematic than we see in the present case. For example, in United States v. Love, No. 06-cr-356 (MJD/JJG), 2006 U.S. Dist. LEXIS 99293 (D. Minn. Dec. 7, 2006) (Graham, M.J.), adopted by 2007 U.S. Dist. LEXIS 101578 (D. Minn. Jan. 3, 2007), while the court determined that the officer's initial question to the defendant, which it described as "a simple greeting," was not the functional equivalent of interrogation:

> However, Love went on to say that he had done nothing wrong, and Daly replied that robbing a bank was wrong. This comment amounted to an accusation that Love had committed a bank robbery, and under the circumstances, Daly had reason to know that this comment would elicit an incriminating response. And the ensuing comment by Love was not a spontaneous utterance, but instead was a direct answer to the preceding accusation.

> Because Daly engaged in the functional equivalent of interrogation before Love received a Miranda warning, there was a violation of the privilege against self-incrimination and the ensuing statement is appropriately suppressed.

2006 U.S. Dist. LEXIS 99293, at *9-10. In the present case, there is no evidence that either of the officers made any accusations about Defendant that would have been expected to elicit a response. Instead, the evidence indicates only that the officers deliberately avoided any conversation with Defendant, except to tell him that they could not speak with him because he had invoked his Miranda rights. On the present record, Defendant's question during transport and his statement on the elevator in the Minneapolis Federal Courthouse were spontaneously volunteered.

The Court, therefore, recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], be **DENIED**.

VI.    **Conclusion**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY RECOMMENDED**:

1. That Defendant's Motion to Dismiss Count One Based on an Unsupportable

   Carjacking Theory, [Docket No. 41], be **DENIED**;

2. That Defendant's Motion to Suppress Eyewitness Identifications, [Docket No. 27], be

   **DENIED**; and

3. That Defendant's Motion to Suppress Evidence Obtained as a Result of Search and

   Seizure, [Docket No. 26], be **DENIED**;

4. That Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket

   No. 28], be **DENIED**.


Dated: September 4, 2013                                  s/Leo I. Brisbois
                                                         Leo I. Brisbois
                                                         U.S. Magistrate Judge


**N O T I C E**

During the August 16, 2013, motions and evidentiary hearing, the parties asked for, and the Court granted, additional time to brief the motions addressed in this Report and Recommendation.  Subsequently, upon the request of the parties, the Court granted further additional time to complete their briefs.  Consequently, and in light of the pending trial date of September 30, 2013, the Court now finds it must reduce the time that the parties are allowed to file, and to respond to, objections to this Report and Recommendation.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by September 10, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **six days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.